1
2
3
4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    MOHAMMED Z. KHAN,                       Case No.  19-cv-08349-WHA (PR)

                  Petitioner,
8                                            **ORDER DENYING PETITION FOR
                                             WRIT OF HABEAS CORPUS AND**
9         v.                                 **CERTIFICATE OF APPEALABILITY**

10   M. POLLARD,

                  Respondent.
11

12                              **INTRODUCTION**

13           Petitioner filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C.

14   § 2254.  He claims that his conviction and sentence violated the federal constitution.  Respondent

15   was ordered to show cause why the petition should not be granted based upon petitioner's three

16   cognizable claims for relief.  Respondent filed an answer with a supporting memorandum and

17   exhibits, and petitioner filed a traverse.  For the reasons discussed below, the petition is **DENIED.**

18                                **STATEMENT**

19   **A.    PROCEDURAL BACKGROUND**

20           Petitioner was convicted in Alameda County Superior Court in 2016 of first-degree

21   murder, attempted voluntary manslaughter and cultivation of marijuana (ECF No. 6-8 at 244).  He

22   was sentenced to a term of 31 years to life in state prison (*ibid*).  On appeal, the California Court

23   of Appeal affirmed the judgment, and the California Supreme Court denied review (*see* ECF No.

24   6-15, Ans. Exs. 6, 7).  Thereafter, petitioner filed the instant habeas petition.

25   **B.    FACTUAL BACKGROUND**

26           The following description of the evidence presented at trial has been taken from the

27   opinion of the California Court of Appeal (Ans. Ex. 6 at 1–5).  The California Court of Appeal's

28   summary of the facts of petitioner's offense is presumed correct.  *See Hernandez v. Small*, 282

United States District Court
Northern District of California

1    F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. 2254(e)(1).

2         The case centers on the murder of Francisco Lopez, and the attempted murder of his

3    brother Fernando Lopez, after they went to rob a grow house.  At the time of the attempted

4    robbery, Abraham and Tiburcio Sanchez and their cousin Jesus Serna were living in the grow

5    house, where petitioner and Sylvestre Arroyo oversaw the operations.

6         On the morning of February 26, 2010, Francisco's girlfriend drove Fernando and him to

7    the grow house.  Francisco and Fernando kicked open the front door.  Serna was awoken by the

8    noise, and he and Abraham approached the brothers with a shotgun.  The brothers explained that

9    Arroyo sent them to rob the grow house and take the marijuana.

10        Abraham called petitioner to inform him of the break-in.  Sometime later, Tiburcio arrived

11   at the house, and, shortly after, petitioner arrived with two other men — Trujillo and Michel.  The

12   men went to the garage where Francisco and Fernando were being held at gunpoint by Abraham

13   and Serna.  Petitioner was armed with an AK–47 rifle and Trujillo a .45–caliber pistol.  Petitioner

14   and Trujillo proceeded to beat and kick the Lopez brothers, bind the brothers' hands with zip ties

15   and remove their clothing.  Michel beat Francisco, choked him with an electrical cord, and tried to

16   hit the brothers in their heads with a drill.

17        The Lopez brothers were later brought outside.  Fernando, who was being held by

18   petitioner, was able to escape and hide in the bushes.  Fernando observed Francisco being placed

19   in the back of a vehicle.  Petitioner, along with a few others, drove to petitioner's house, where the

20   men continued to beat Francisco.  Petitioner's wife asked the men to stop the beatings, and

21   petitioner stated that Francisco could not stay at his home.  Francisco, who appeared to have

22   trouble breathing, was placed back in the vehicle and ultimately left on the ground at the side of

23   the road to die.  The body was found six months later.  An autopsy revealed that Francisco's death

24   was caused by multiple fractures to his body, as a result of blunt force trauma.

25                                        **ANALYSIS**

26   **A.    STANDARD OF REVIEW**

27        Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

28   federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

United States District Court
Northern District of California

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *Id.* at 409.

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).[1]  In reviewing each claim, the court must examine the last reasoned state court decision that addressed the claim.  *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

**B.   CLAIMS FOR RELIEF**

As grounds for federal habeas relief, petitioner claims: (1) there was insufficient evidence

---

[1] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default.  *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005).

United States District Court
Northern District of California

1    to support his conviction of attempted voluntary manslaughter; (2) there was insufficient evidence

2    to support his conviction of first-degree murder; and (3) the trial court erred by issuing a jury

3    instruction under CALCRIM No. 540.

4         1.   SUFFICIENCY OF THE EVIDENCE: CLAIMS ONE AND TWO

5         In his first claim, petitioner argues that there was insufficient evidence to support his

6    conviction for attempted voluntary manslaughter (Pet. 8).  Evidence is constitutionally sufficient

7    to support a conviction when, upon "viewing the evidence in the light most favorable to the

8    prosecution, any rational trier of fact could have found the essential elements of the crime beyond

9    a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis excluded).  The

10   reviewing court must presume the trier of fact resolved any conflicts in the evidence in favor of

11   the prosecution and must defer to that resolution.  *Id.* at 326.  State law provides "for 'the

12   substantive elements of the criminal offense,' but the minimum amount of evidence that the Due

13   Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v.

14   Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319).  The only question is

15   "whether the finding was so insupportable as to fall below the threshold of bare rationality." *Id.* at

16   656.  The jury, not the court, decides what conclusions should be drawn from evidence admitted at

17   trial.  *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).  The jury's credibility determinations

18   are, therefore, entitled to near-total deference.  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir.

19   2004).

20        In order to convict a defendant of attempted voluntary manslaughter under California law,

21   the jury must find that the defendant: (1) harbored a specific intent to kill; and (2) desired the

22   result of death or knew to a substantial certainty that death would occur.  *People v. Montes*, 112

23   Cal.App.4th 1543, 1545 (Cal. Ct. App. 2003); *People v. Smith*, 37 Cal.4th 733, 739 (2005).

24        The California Court of Appeal found that there was sufficient evidence of petitioner's

25   intent to kill, stating:

26        In sum, Khan was the ringleader of the group that beat up both Lopez
27        brothers; participated himself in both beatings; and commented that
          the brothers were "done for."  This evidence, coupled with Khan's
28        involvement in the death of Francisco . . . supports that what was
          done, was done at Khan's apparent direction.  This evidence supports

the jury's verdict that Khan not only intended to kill Francisco, but that, had Fernando not broken free and escaped, the same fate awaited him.

(Ans. Ex. 6 at 19).

Petitioner argues that the record is devoid of any evidence proving that he had the requisite intent to kill (Pet. 9). He explains that Fernando only suffered minor bruises, and the state court's finding rests on mere speculation (*ibid*). The state court decision denying this claim was neither contrary to nor an unreasonable application of federal law

The record establishes that after the Lopez brothers broke into the home and were detained, Abraham immediately called petitioner, because he had "top command there" (RT 479, 487). Through Trujillo, who acted as an interpreter, Abraham informed petitioner of the break-in, and Abraham was told that petitioner and Trujillo would come to the house (*id*. 488–89). Prior to petitioner arriving at the house, the Lopez brothers were not hit or beaten (*id*. 167). The Lopez brothers and Abraham and Serna, "were just chatting like normal people" (*id*. 168). Once petitioner arrived, he immediately began to hit the Lopez brothers with a gun, in the head, and kick them (*id*. 170–73). As a result of the beatings, the brothers were bleeding from the mouth (*id*. 174). Petitioner, along with the other men, tied up the Lopez brothers (*id*. 514). At one point, Fernando was screaming and trying to get away from petitioner (*id*. at 516). Soon after, Fernando was able to break the plastic ties that bound his hands and run away from petitioner (*ibid*). Once Fernando ran away, petitioner went after him (*id*. 765).

Fernando testified that petitioner hit him and kicked him (*id*. 344). He further testified that petitioner threatened him and his brother, stating "he was just telling us that we're done for, you know, that was a mistake, you guys – what we did, and we're done for, that was it for us" (*id*. 367). When asked whether he felt his life was in danger, Fernando testified, "[y]eah, I knew it was" (*ibid*). Petitioner, grabbing hold of Fernando's bound hands, directed Fernando toward the car (*id*. 372). After Fernando broke free, petitioner proceeded to drive Francisco, who was "in pretty bad condition" to his home (*id*. 771). Francisco, who was unable to get out of the truck by himself, was dragged to the living room, and kicked in the chest by petitioner (*id*. 776–77). After petitioner's wife complained about the beatings, petitioner stated he didn't want Francisco at his

5

1    home anymore (*id.* 780).

2         In light of the testimony above, there was an abundance of evidence for the jury to find the

3    elements of attempted voluntary manslaughter — that petitioner intended to kill Fernando and

4    desired his death.  Petitioner was in command of the operation, and it was at his ultimate direction

5    that the Lopez brothers were beaten.  Petitioner helped bind Fernando's hands, and held Fernando

6    as petitioner led him to the vehicle.  As the state court appropriately noted, based on the totality of

7    the evidence, it was only because Fernando was able to break free from petitioner, that he escaped

8    the same fate as his brother.  Viewing the evidence in the light most favorable to the prosecution,

9    there was sufficient evidence for the jury to find the essential elements of attempted voluntary

10   manslaughter beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.  Petitioner fails to show that

11   the state court's ruling was contrary to, or an unreasonable application of Supreme Court case law.

12   Petitioner is denied relief on this claim.

13        In his second claim, petitioner asserts that there was insufficient evidence to support his

14   conviction for first-degree murder as a perpetrator or aider and abettor.  The state appellate court

15   found that there was substantial evidence to support a finding that petitioner was guilty of

16   kidnapping either as a direct perpetrator or as an aider and abettor: "the evidence showed that he

17   orchestrated the kidnapping and subsequent beating, and that it was under his direction that

18   Francisco was left to die at the side of the road" (Ans. Ex. 6 at 11).  Thus, the state court held that

19   there was sufficient evidence to render petitioner guilty of felony murder based on the kidnapping

20   (*id.* 12).  The court further explained that there was "also substantial evidence of a causal and

21   temporal relationship between the kidnapping and the acts that resulted in Francisco's death[,]"

22   because it was evident that the kidnapping and homicidal act were part of one continuous

23   transaction (*ibid*).

24        The appellate court's denial of the claim was neither contrary to nor an unreasonable

25   application of clearly established law.  Under California law, kidnapping has three elements: (1) a

26   person was unlawfully moved by the use of physical force or fear; (2) the movement of the person

27   was for a substantial distance; and (3) the movement was without the person's consent.  *People v.*

28   *Bell*, 179 Cal.App.4th 428, 435 (Cal. Ct. App. 2009).  California law extends liability as principals

United States District Court
Northern District of California

1    in a crime to "[a]ll persons concerned in the commission of a crime," and all those who "aid and

2    abet in its commission."  Cal. Penal Code § 31.  A defendant who himself commits the offense is

3    guilty as a direct perpetrator; if he assists another, he is guilty as an aider and abettor.  *See People*

4    *v. Perez*, 35 Cal.4th 1219, 1225 (2005).

5         The testimony at trial established that petitioner: beat Francisco, helped bind his hands, led

6    the brothers outside, drove the offending vehicle, and continued to beat Francisco in his home.

7    Based on this testimony, there was sufficient evidence to find the elements of kidnapping beyond

8    a reasonable doubt.  *Jackson*, 443 U.S. at 319.  Once found, it was not unreasonable for the state

9    court to find that the kidnapping and homicide were one continuous act.  Immediately after

10   Francisco was kidnapped, he was beaten by petitioner, and at petitioner's direction, he was

11   removed from the home and ultimately deposited on the side of the road to die.  Thus, under a

12   theory of felony murder, whether petitioner committed the ultimate homicidal act is irrelevant, so

13   long as he intended the kidnapping of Francisco.  *See People v. Anderson*, 70 Cal.2d 15, 34 (1968)

14   ("the evidence must establish that the defendant harbored the felonious intent either prior to or

15   during the commission of the acts which resulted in the victim's death").  Based on the foregoing,

16   the state court decision denying this claim was neither an unreasonable application of Supreme

17   Court precedent, nor an unreasonable determination of the facts.  Habeas relief is denied on this

18   claim.

19        2.  JURY INSTRUCTION: CLAIM THREE

20        Petitioner contends that the trial court erred in instructing the jury on aiding and abetting

21   for felony murder based on kidnapping under CALCRIM No. 540.  The trial judge instructed the

22   jury as follows: "The defendant must have intended to commit or aided and abetted the felony of

23   kidnapping *before* or at the time that a perpetrator caused the death" (RT 1152 (emphasis added)).

24   Specifically, petitioner takes issue with the word "before", finding that it conflicts with two

25   California state cases: *People v. Pulido*, 15 Cal.4th 713 (1997), and *People v. Hill* 236

26   Cal.App.4th 1100 (Cal. Ct. App. 2015).  (*See* Ans. Ex. 7a 23–29).  The state appellate court

27   reviewed the cases and rejected petitioner's claim, explaining that a defendant is liable for felony

28   murder "so long as the felonies and the homicide were part of one continuous transaction and

7

1  defendants were engaged in the felonious scheme *before or during* the killing" (Ans. Ex. 6 at 7–9
2  (emphasis added)).

3    Petitioner appears to be challenging the jury instruction solely as an error under state law.
4  Such a claim is not cognizable in federal habeas proceedings. *See Estelle v. McGuire*, 502 U.S.
5  62, 71–72 (1991). Instead, to rise to the level of a constitutional violation, a petitioner must show
6  that the ailing instruction by itself so infected the entire trial that the resulting conviction violates
7  due process. *Id.* at 72. The court must evaluate jury instructions in the context of the overall
8  charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152,
9  169 (1982) (citation omitted). A habeas petitioner is not entitled to relief unless the instructional
10  error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*
11  *v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotations marks and citation omitted).

12    As the state court explained, the jury instruction in this case was proper under California
13  state law — "felony-murder liability attaches . . . to those engaged in the felonious scheme *before*
14  *or during* the killing." *People v. Cavitt*, 33 Cal.4th 187, 207 (2004) (citing *Pulido*, 15 Cal.4th at
15  729) (emphasis added). Based on the evidence adduced at trial, petitioner was involved in the
16  felonious scheme nearly until the end. He engaged in the initial beatings, tied the brothers' hands,
17  drove the vehicle, continued to beat Francisco in his home, and asked that Francisco be taken
18  away. Not long after, Francisco was deposited at the side of the road to die. Because the jury
19  instruction was entirely proper under California state law, there is nothing to indicate that the
20  instruction was a violation of due process. *See Estelle*, 502 U.S. at 67–68 ("it is not the province
21  of a federal habeas court to reexamine state-court determinations on state-law questions"). There
22  is no basis to grant federal habeas relief based on the trial court's jury instruction.

23                                **CONCLUSION**

24    For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

25    A certificate of appealability will not issue because reasonable jurists would not "find the
26  district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*,
27  529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the United States
28  Court of Appeals.

United States District Court
Northern District of California

1    The clerk shall close the file.

2    **IT IS SO ORDERED.**

3  Dated: February 10, 2021

4    _____

5    WILLIAM ALSUP
     UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California